IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT TOLLIVER,

                    Plaintiff,

  v.                                                            OPINION and ORDER

NATIONAL CREDIT SYSTEMS, INC.,                         20-cv-728-jdp

                    Defendant.

---

Plaintiff Scott Tolliver is suing defendant National Credit Systems, Inc. under the Fair Debt Collection Practices Act (FDCPA) for failing to inform credit reporting agencies that he disputed two debts held by National Credit. Both parties move for summary judgment. Dkt. 47 and Dkt. 58. National Credit challenges Tolliver's claim on several grounds, including that Tolliver lacks standing to sue because he hasn't suffered a concrete injury, that National Credit didn't violate the FDCPA because it didn't receive notice that Tolliver was disputing his debt, and that any violation was the result of a "bona fide error," which is an affirmative defense under the FDCPA. For the reasons explained below, the court will grant National Credit's motion for summary judgment and deny Tolliver's motion.

BACKGROUND

Tolliver contends that National Credit violated 15 U.S.C. § 1692e(8), which prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."[1] Specifically, Tolliver alleges that his counsel

---

[1] Tolliver cites other FDCPA provisions in his complaint, *see* Dkt. 1, ¶ 22, but he relies solely on § 1692e(8) in his summary judgment briefs, so he appears to have abandoned any other

sent two form letters to National Credit in August 2019 via First Class Mail. He cites copies of letters addressed to National Credit stating that Tolliver "disputes the debt you are attempting to collect." Dkt. 48-3 and Dkt. 48-4. (In fact, Tolliver had *two* debts with National Credit, one for approximately $2,900 and the other for $114, both related to past-due rent. Dkt. 82, ¶¶ 9–11 and Dkt. 85, ¶¶ 1–2.) The letters included Tolliver's name, address, and Social Security number, but not his account numbers. Tolliver did not track the letters to confirm their receipt.

There is no dispute that National Credit is required under § 1692e(8) to inform credit reporting agencies when a consumer disputes a debt. And there is no dispute that National Credit failed to inform any credit reporting agencies that Tolliver's debts were disputed. But, according to National Credit, this is because it never received either letter. It has no record of the letters in its files, and it questions whether Tolliver actually mailed the letters. National Credit also challenges Tolliver's claim on several other grounds, including that Tolliver doesn't have standing to sue and that it is entitled to the bona fide error defense under 15 U.S.C. § 1692k(c).[2]

---

legal theory. In any event, the court's conclusions in this opinion aren't based on a particular violation of the FDCPA but rather on the conduct alleged, which is the failure to report a dispute to a credit reporting agency.

[22] National Credit also contends that the statute of limitations had expired before Tolliver filed this lawsuit, that Tolliver doesn't have admissible evidence that any credit reporting agency reported Tolliver's debts as not being disputed, and that Tolliver's debts to National Credit aren't covered by the FDCPA because he hasn't shown that they were incurred for "personal, family, or household purposes." Dkt. 59, at 3–5 and Dkt. 68, at 4. The first two contentions were raised only in National Credit's opening brief and appear to have been abandoned in its reply brief. National Credit raised the second contention only in opposition to Tolliver's motion for summary judgment, not in support of its own motion. Regardless, the court need not consider these contentions because National Credit is entitled to summary judgment on other grounds.

ANALYSIS

For the purpose of this opinion, the court will assume that Tolliver did mail the letters and that National Credit received them. Even so, the court concludes that National Credit is entitled to summary judgment because Tolliver hasn't shown that he has standing to sue. And even if he did have standing, National Credit would be entitled to the bona fide error defense.

**A. Standing**

The first question is whether Tolliver has shown that he has standing to sue, which is one of the requirements for subject matter jurisdiction. *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Standing doctrine requires Tolliver to show that he suffered an injury in fact that is both fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In this case, National Credit contends that Tolliver hasn't demonstrated an injury in fact, which the Supreme Court has defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). As with any other factual proposition, the plaintiff must prove standing with specific facts at the summary judgment stage. *Id.* at 561.

Tolliver doesn't contend that National Credit's failure to inform credit reporting agencies of his dispute caused him financial harm, such as a denial of credit or even a lower credit score. Instead, he says that four other injuries give him standing: (1) the *risk* of financial harm caused by inaccurate information on his credit report; (2) the "reputational harm" caused by National Credit communicating erroneous information to credit reporting agencies; (3) emotional distress; and (4) time and "resources" expended because of National Credit's violation of the FDCPA.

1. **Risk of financial harm**

Tolliver's first alleged injury rests on *Evans v. Portfolio Recovery Associates, LLC*, which also involved plaintiffs asserting a claim under § 1692e(8). 889 F.3d 337 (7th Cir. 2018). The court of appeals held that the plaintiffs had standing because they faced "a real risk of financial harm caused by an inaccurate credit rating." *Id.* at 345 (quoting *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017)).

The court isn't persuaded that Tolliver can rely on *Evans* to prove standing in this case. As an initial matter, the Supreme Court recently questioned whether a risk of harm is enough to show an injury in fact in a suit such as this one that doesn't seek injunctive relief. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021). In *Ramirez*, multiple classes of consumers contended that they had standing because of TransUnion's misuse of their credit reports. One group of plaintiffs alleged that their credit reports were inaccurate, but they didn't adduce evidence that TransUnion had shared the reports with a third party. Instead, the plaintiffs said that inaccurate information in TransUnion's "internal credit files exposed them to a material risk that the information would be disseminated in the future to third parties," and that such a risk qualified as an injury fact. *Id.* at 2210.

The Court was dubious of the plaintiffs' argument. It considered "persuasive" TransUnion's "argument that in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *Id.* at 2210–11. Ultimately, the Court did not need to decide the issue because it concluded that the plaintiffs "did not factually establish a sufficient risk of future harm to support Article III standing" for any type of relief. *Id.* at 2212.

The Supreme Court did not expressly overrule *Evans*, so this court is still bound by that decision until the court of appeals revisits it. *See* Brief for Appellee, *Webster v. Receivables Performance Management, LLC*, No. 21-1299 (7th Cir. Aug. 11, 2021), *available at* 2021 WL 3701128 (asking court to overturn *Evans* in light of *Ramirez*). But even *Evans* did not hold that a violation of § 1692e(8) is an injury in fact in and of itself. Rather, "the *Evans* court made clear that it is not enough that the statutory violation presented a risk of harm—the plaintiff has to explicitly allege a risk of concrete harm." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 786 (7th Cir. 2021) (Rovner, J., concurring). *See also Casillas v. Madison Ave. Assocs., Inc.*, 926 F.329, 333 (7th Cir. 2019) ("[T]he fact that Congress has authorized a plaintiff to sue a debt collector who fails to comply with any requirement of the Fair Debt Collection Practices Act does not mean that [the plaintiff] has standing." (internal quotation marks, citations, and alterations omitted). And, "at the summary judgment stage, . . . a party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (internal quotation marks and alterations omitted).

In *Evans*, the plaintiffs alleged that their credit scores were lowered as a result of the defendant's conduct, which, in turn, created a risk of financial harm. 889 F.3d at 345–46. District courts applying *Evans* have likewise required the plaintiff to show some change in the plaintiff's status beyond the bare violation of the law. *See, e.g.*, *Anderson v. I.C. Sys., Inc.*, No. 20-cv-263-jdp, 2021 WL 1392997, at *3 (W.D. Wis. Apr. 13, 2021) (plaintiff had standing under *Evans* because he presented evidence that the defendant's conduct lowered his credit score); *Maxwell v. L. Off. of Jennifer McCoy*, P.C., No. 120CV03239DLPJPH, 2021 WL 3741999, at *7 (S.D. Ind. Aug. 23, 2021) (plaintiff would have standing under *Evans* if the defendant's violation of § 1692e(8) "affected her credit"). In this case, Tolliver hasn't adduced

5

any evidence that National Credit's failure to notify Experian about his dispute adversely affected his credit or otherwise created a risk of financial harm. Rather, he rests on the inherent risk of harm in any violation of § 1692e(8). That's not enough under *Evans* or *Ramirez*, so Tolliver doesn't have standing on the basis of a risk of financial harm.

### 2. Reputational harm

Tolliver next contends that he suffered a "reputational harm" like the one that the Supreme Court found to be sufficient for a different group of plaintiffs in *Ramirez*. In that case, TransUnion provided third parties with credit reports that labeled some of the class members as potential terrorists, drug traffickers, or serious criminals. *Ramirez*, 141 S. Ct. at 2209. That was sufficient for standing, the Court reasoned, because false or misleading statements "of this kind" bear "a close relationship" to the harm associated with the tort of defamation. *Id.* Tolliver contends that his injury is like the one in *Ramirez* because National Credit "disseminated erroneous financial information to a third party, namely Experian, the credit reporting agency." Dkt. 64, at 5.

Tolliver's attempt to analogize his injury to the one in *Ramirez* is simply a repackaging of his previous contention that a bare violation of § 1692e(8) is itself an injury in fact. He doesn't cite any cases decided before or after *Ramirez* that recognized a failure to report a dispute as a "reputational harm" that provides standing to sue. *Evans* relied solely on the risk of financial harm. Other courts considering standing for violations of § 1692e(8) have taken the same approach.[3] And that makes sense. A credit reporting agency's belief that a debt isn't

---

[3] *See, e.g.*, *Sayles,* 865 F.3d at 250; *Bassett v. Credit Bureau Servs., Inc.*, No. 8:16CV449, 2021 WL 3579073, at *3 (D. Neb. Aug. 13, 2021); *Scaife v. Nat'l Credit Sys., Inc.*, No. 1:20-CV-00379-CLM, 2021 WL 1610620, at *4 (N.D. Ala. Apr. 26, 2021); *Foster v. AFNI, Inc.*, No. 2:18-CV-12340-TGB, 2020 WL 1531651, at *4 (E.D. Mich. Mar. 31, 2020); *Arellano v. Virtuoso Sourcing Grp.*, LLC, No. 17-CV-00681-H-WVG, 2017 WL 3993959, at *3 (S.D. Cal.

disputed can't be equated with a third-party business's belief that a consumer is a terrorist or criminal.

Defamation is generally limited to a communication that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559. In this case, the only "third person" that Tolliver alleges obtained the information at issue was Experian. As a credit reporting agency, Experian will not be "deterred" from dealing with Tolliver regardless of whether his debts are disputed. Tolliver doesn't identify any interest that he has in his reputation with a credit reporting agency other than the agency's determination of his credit score. So any reputational harm in this context is same as the risk of financial harm. Because Tolliver hasn't adduced evidence that his credit score was affected by National Credit's failure to report his dispute, he has no basis to assert that his "reputation" with Experian was harmed.

### 3. Emotional distress

Tolliver includes one sentence in his brief stating that National Credit's failure to report his dispute "caused Mr. Tolliver to be frustrated, distressed, and alarmed at the prospect of having his private financial information transmitted to a third party who is a credit reporting agency." Dkt. 64, at 5. This alleged injury fails for two reasons. First, Tolliver cites no evidence supporting the statement in his brief, so the court can't consider it. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1379 n.5 (7th Cir. 1985). Second, being "confused and aggravated" because

---

Sept. 11, 2017).

of misinformation that violates the FDCPA isn't itself an injury in fact, in the absence of other, concrete harm. *Markakos*, 997 F.3d at 781.

### 4. Time and resources

Tolliver's declaration includes the following sentence: "I had to spend my limited time, gasoline, wear and tear on my vehicle, and other limited resources to handle the Defendant's failure to dispute the account at issue in this matter." Dkt. 55, ¶ 10. But Tolliver doesn't explain how he used his time and resources to "handle" National Credit's alleged failure. For example, he doesn't say that he tried to contact National Credit himself after it failed to acknowledge his counsel's letters, and he doesn't identify any particular action he took to fix the mistake. His testimony is simply too vague to support standing at the summary judgment stage. *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." (internal quotation marks and alterations omitted)).

In his reply brief, Tolliver suggests that he is referring to time spent on this lawsuit. *See* Dkt. 76, at 9 ("Mr. Tolliver testified that he had read the civil Complaint prepared by his attorney."). But if this lawsuit is an "injury," it is self-inflicted. National Credit didn't require Tolliver to file this case. *See Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) ("[D]iversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing."); *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 517–18 (7th Cir. 2010) (injury arising from litigation decision is self-inflicted and therefore not fairly traceable to the defendant's conduct). If time spent on a lawsuit were enough to provide standing for the same lawsuit, then a plaintiff would have standing in *every*

8

case. That's not the law, so the court concludes that Tolliver has failed to show that he has standing to sue.

B. **Bona fide error defense**

Even if Tolliver had standing to sue, the court would grant summary judgment to National Credit on its affirmative defense. Under § 1692k(c), "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Assuming that National Credit received one or both of Tolliver's letters, there is no dispute that National Credit's failure to report Tolliver's dispute was unintentional and the result of a bona fide error. Tolliver alleges that National Credit lost the letters, not that it destroyed or hid them. So the question is whether National Credit maintained "procedures reasonably adapted to avoid" losing mail in August 2019. Section 1692k(c) is an affirmative defense, so it is National Credit's burden to prove by a preponderance of the evidence that it has satisfied the requirements of the defense.

National Credit explained its procedures in testimony provided by Ron Sapp (the vice president of operations), along with Velda Bonds (the office manager) and Denise Dukes (a receptionist). Bonds and Dukes were the primary employees involved with screening the mail in August 2019, and both of them had been in their positions for more than 10 years. Dkt. 85, ¶¶ 14, 24.

First, Dukes went to the post office at approximately 9:40 a.m. to pick up the mail, which was placed in tubs. She carried the tubs to her car and drove to National Credit, where she would deliver the tubs directly to Bonds. Dkt. 85, ¶¶ 25–28.

9

Second, Bonds opened and sorted the mail. She placed the envelopes in different stacks, including a stack for correspondence from debtors. Dkt. 50 (Bonds Dep. 29:14–30:7).

Third, Bonds opened the envelopes and reviewed each letter for an account number. If the letter included that number, she wrote it on the top of the letter. If it didn't, she tried to identify the account by the debtor's Social Security number, address, or name, depending on what information was included with the letter. If she still couldn't identify the account, she put the letter in a separate stack for later review. *Id.* at 30:20–31:18.

Fourth, if Bonds could identify the account, she delivered the letter to another employee for scanning into National Credit's system. As of August 2019, that employee had been with the company for more than 20 years. After scanning, the letter would be delivered to an employee to respond to the letters. *Id.* at 33:20–36:6.

Fifth, if Bonds was unable to identify the account, she sent a letter back to the debtor asking for more information. *Id.* at 37:15–38:1. In the meantime, the debtor's letter was stored in a locked cabinet. *Id.* at 45:5–10. If there was no return address on the letter, it was scanned and placed into an electronic file for "unidentified" letters. *Id.* at 44:16–20.

Sixth, if Bonds didn't receive a new letter from the debtor with more information, the original letter was scanned into the "unidentified" file, and the hard copy was shredded. *Id.* at 46:1–14. During any point in this process, Bonds placed the mail in a locked cabinet when she was away from her desk. Dkt. 85, ¶ 28. Only Bonds and Sapp had the key to the cabinet. *Id.*

Tolliver identifies no problems with National Credit's procedures, and he identifies no steps that he would add or subtract. In fact, National Credit's procedures appear to be similar to those discussed in *Williams v. Enhanced Recovery Co., LLC*, which Tolliver cites as a model for what mail handling procedures should be. No. 18-CV-03699-HSG, 2019 WL 3817867, at *3

10

(N.D. Cal. Aug. 14, 2019). But Tolliver points out that the procedures in *Williams* were in writing, and he contends that National Credit's procedures aren't reasonable because they aren't written down.

Putting procedures in writing can help ensure that the procedures are consistently followed, particularly when the procedures are complicated or many employees are responsible for implementing them. For this reason, written procedures are a best practice. But the text of § 1692k(c) doesn't equate "reasonable" with "written." If Congress had wanted to impose a requirement that all procedures be in writing, it could have said so in the statute. So the lack of written procedures is a factor that the court may consider under § 1692k(c), but the court cannot read a writing requirement into the statute.

Tolliver cites *VanHuss v. Rausch, Sturm, Israel, Enerson & Hornik,* No. 16-cv-372-slc, 2017 WL 1379402 (W.D. Wis. Apr. 14, 2017), *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986 (D. Ariz. 2010), and *Carrigan v. Central Adjustment Bureau, Inc.*, 494 F. Supp. 824 (N.D. Ga. 1980), for the proposition that procedures are per se unreasonable if they aren't in writing. But the problems in each of those cases went beyond the lack of written procedures. In each case, the debt collector hadn't identified any procedure, written or otherwise, on matters that were relevant to the error at issue. *VanHuss*, 2017 WL 1379402, at *7; *Isham*, 738 F. Supp. 2d at 1000; *Carrigan*, 494 F. Supp. at 827. So these cases aren't instructive.

In this case, National Credit's procedures for preventing the loss of mail are relatively simple, and only two experienced employees were primarily responsible for implementing those procedures at the time relevant to this case. And Tolliver doesn't identify how written procedures would have made a difference. Under those circumstances, the court isn't persuaded that National Credit's procedures aren't reasonable simply because they aren't in writing.

Tolliver also raises two other issues that he says are relevant to the reasonableness of National Credit's procedures. First, he says that two witnesses did "not agree on the employees involved in handling the mail." Dkt. 64, at 15. But the testimony Tolliver cites isn't inconsistent. The first witness testified about the employees who "would've been associated with this particular case." Dkt. 49 (Sapp Dep. 95:11–15). The second witness testified generally about "the people working in the clerical department." Dkt. 51 (Dukes Dep. 33:13–23).

Second, Tolliver says that the area where Bonds opened the mail wasn't secure, citing Dukes's testimony that the room was "large," "open," and had "a lot" of employee traffic from two departments. Dkt. 76, at 15. But it's undisputed that the mail was in a locked cabinet whenever Bonds wasn't present, so the court isn't persuaded that the size of the room shows that National Credit's mail handling procedures weren't reasonable.

National Credit's mail handling procedures are reasonable on their face, and Tolliver hasn't identified any additional procedures National Credit should have adopted to prevent the loss of mail. So even if Tolliver had standing to sue, the court would grant summary judgment to National Credit on its affirmative defense.

ORDER

IT IS ORDERED that defendant National Credit Systems, Inc.'s motion for summary judgment, Dkt. 58, is GRANTED, and plaintiff Scott Tolliver's motion for summary judgment,

Dkt. 47, is DENIED. This case is DISMISSED for lack of subject matter jurisdiction. The clerk of court is directed to enter judgment in National Credit's favor and close this case.

Entered September 22, 2021.

                                      BY THE COURT:

                                      /s/

                                      _____

                                      JAMES D. PETERSON
                                      District Judge